**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| INTERTRUST TECHNOLOGIES CORP., | § | |
| _Plaintiff_, | § | |
| | § | |
| v. | § | Civil Action No. 2:19-cv-266 |
| | § | (LEAD CASE) |
| CINEMARK HOLDINGS, INC., | § | |
| _Defendant_. | § | |
| | § | |
| INTERTRUST TECHNOLOGIES CORP., | § | |
| _Plaintiff_, | § | |
| | § | |
| v. | § | Civil Action No. 2:19-cv-265 |
| | § | |
| AMC ENTERTAINMENT HOLDINGS, | § | |
| INC., | § | |
| _Defendant_. | § | |
| | § | |
| INTERTRUST TECHNOLOGIES CORP., | § | |
| _Plaintiff_, | § | |
| | § | |
| v. | § | Civil Action No. 2:19-cv-267 |
| | § | |
| REGAL ENTERTAINMENT GROUP, | § | |
| _Defendant_. | § | |
| | § | |

## DEFENDANTS AMC ENTERTAINMENT HOLDINGS, INC., CINEMARK HOLDINGS, INC., AND REGAL ENTERTAINMENT GROUP'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA

## TABLE OF CONTENTS

I.    INTRODUCTION......................................................................................................1

II.   DESCRIPTION OF THE CASE...............................................................................3

III.  STATEMENT OF THE LAW ...................................................................................5

IV.   THE TRANSFER ANALYSIS FAVORS NDCAL ...................................................7

   A.   These Actions Could Have Been Brought in NDCal .................................................7

   B.   The Private Interest Factors Favor Transfer ............................................................7

      1.   Relative Ease of Access to Sources of Proof Strongly Favors Transfer................7

      2.   Availability of Compulsory Process Favors Transfer...........................................9

      3.   Convenience and Cost for Willing Witnesses Strongly Favors Transfer .............10

      4.   Other Practical Factors Favor Transfer................................................................11

   C.   The Public Interest Factors Favor Transfer ............................................................12

      1.   Court Congestion is Neutral .................................................................................12

      2.   Local Interest in Adjudicating Local Disputes Favors Transfer ..........................12

      3.   Familiarity With the Law and Avoidance of Conflicts Factors Are Neutral ........13

      4.   The Public Interest Underlying the First-To-File Rule Favors Transfer ..............13

V.    CONCLUSION........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACQIS LLC v. EMC Corp.*,
    67 F. Supp. 3d 769 (E.D. Tex. 2014) ..............................................................10

*AmberWave Sys. Corp. v. Intel Corp.*,
    No. 2:05-cv-321, 2005 WL 2861476 (E.D. Tex. Nov. 1, 2005) .........................14

*In re Apple, Inc.*,
    581 F. App'x 886 (Fed. Cir. 2014) ....................................................................9

*Collins v. Am. Auto. Ins. Co.*,
    230 F.2d 416 (2d Cir. 1956) ..............................................................................6

*Custom Seal, Inc. v. Duro-Last Roofing, Inc.*,
    No. 6:11-CV-122, 2012 WL 12930886 (E.D. Tex. Sept. 20, 2012) .....................3

*DSS Tech. Mgmt., Inc. v. Apple, Inc.*,
    No. 6:13CV919-JDL, 2014 WL 6847569 (E.D. Tex. Nov. 7, 2014) ...................11

*Fujitsu Ltd. v. Tellabs, Inc.*,
    639 F. Supp. 2d 761 (E.D. Tex. 2009) ................................................................7

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) ...............................................5, 6, 7, 10, 11, 12

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993) ....................................................................2, 15

*Kahn v. Gen. Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) ..................................................................14, 15

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
    518 F.3d 897 (Fed. Cir. 2008) ............................................................................4

*Mohamed v. Mazda Motor Corp.*,
    90 F. Supp. 2d 757 (E.D. Tex. 2000) .................................................................6

*In re Nintendo, Co. Ltd*,
    589 F.3d 1194 (Fed. Cir. 2009) ...................................................................6, 11

*Save Power, Ltd. v. Syntek Finance Corp.*,
    121 F.3d 947 (5th Cir. 1997) ..........................................................................14

*In re Toa Techs., Inc.*,
    543 F. App'x 1006 (Fed. Cir. 2013) ...................................................................7

*In re TS Tech USA Corp.,*
   551 F.3d 1315 (Fed. Cir. 2008) ................................................................ 5, 6, 13

*United States v. Team Fin., L.L.C.,*
   No. 2:16-CV-00432-JRG, 2019 WL 3976364 (E.D. Tex. Aug. 22, 2019) ........................... 10

*Virtual Agility, Inc. v. Salesforce, Inc.,*
   No. 2:13-cv-00011, 2014 WL 459719 (E.D. Tex. Jan. 31, 2014) ........................................... 9

*In re Volkswagen AG,*
   371 F.3d 201 (5th Cir. 2004) ................................................................ 6, 11, 13

*In re Volkswagen of Am., Inc.,*
   545 F.3d 304 (5th Cir. 2008) ...................................................................... 6, 9

*In re Volkswagen of Am., Inc.,*
   566 F.3d 1349 (Fed. Cir. 2009) ..................................................................... 12

**Rules and Statutes**

28 U.S.C. § 1400(b) ...................................................................................... 6

28 U.S.C. § 1404(a) .................................................................................... 1, 5

Fed. R. Civ. P. 45 ........................................................................................ 9

Pursuant to 28 U.S.C. § 1404(a), AMC Entertainment Holdings, Inc. ("AMC"), Cinemark Holdings, Inc. ("Cinemark"), and Regal Entertainment Group ("Regal") (collectively, "Defendants") move the Court to transfer these consolidated cases from the Eastern District of Texas ("EDTex") to the Northern District of California ("NDCal").

## I.   INTRODUCTION

Intertrust Technologies, Inc. ("Intertrust") filed this case in EDTex fifty-five days **after** one of Defendants' equipment vendors, Dolby Laboratories, Inc. ("Dolby"), filed a declaratory judgment action for noninfringement in NDCal regarding **all** eleven patents-at-issue.  *Compare* Dkt. 1 (filed Aug. 7, 2019) *with* Declaration of Catherine J. Garza ("Garza Dec.") at ¶ 2 at Ex. A (Complaint, *Dolby Labs., Inc. v. Intertrust Techs. Corp.*, No. 3:19-cv-03371-EMC, Dkt. 1 (N.D. Cal. June 13, 2019) ("*Dolby* Action")).   In recognizing the substantial similarity between the *Dolby* Action and these subsequent cases, the NDCal Court recently observed:  "In June 2019, Dolby initiated the instant lawsuit, seeking a declaration that it does not infringe on Intertrust's eleven patents. . . . Several months later, in August 2019, Intertrust filed three lawsuits against three of Dolby's customers—namely, AMC, Cinemark, and Regal—in the Eastern District of Texas. Intertrust asserted infringement of the eleven patents at issue in the case at bar."  Garza Dec. at ¶ 3 at Ex. B (Order on Defendant's Motion to Dismiss, *Dolby Labs., Inc. v. Intertrust Techs. Corp.*, No. 19-CV-03371-EMC, Dkt. 56 at 6–7, 2019 WL 5788574, at *3–4 (N.D. Cal. Nov. 6, 2019) (citation omitted)).[1]  Dolby's first-filed action against Intertrust takes precedence

---

[1] After suing Defendants in EDTex, Intertrust moved to dismiss the Dolby case in NDCal. Intertrust argued that Dolby did not have a reasonable apprehension of suit despite Intertrust's assertion of its patents against the Defendants related to their use of Dolby's DCI equipment, the Defendants' indemnity demands upon Dolby, and Intertrust's invitation to Dolby to discuss its patent assertions against the Defendants.  Garza Dec. at ¶ 4 at Ex. C (Opposition to Motion to Dismiss, *Dolby Labs., Inc. v. Intertrust Techs. Corp.*, No. 19-CV-03371-EMC, Dkt. 43 at 1

over Intertrust's second-filed customer suits, and there is simply no basis to deviate from the first-to-file rule. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled on other grounds, Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995).

This action is Intertrust's only apparent connection to EDTex.  Intertrust cannot reasonably dispute that it would be more efficient to have one court preside over all of these cases, rather than two.  This is particularly true given all the cases involve the *same* claims for infringement of the *same* eleven patents, and transfer would conserve the scarce resources of the courts and avoid the risk of inconsistent rulings.

Independent of Dolby's first-filed declaratory judgment action, this action has strong connections to NDCal.  Intertrust has its principal place of business in NDCal and previously chose NDCal to assert certain of the patents-at-issue here.  Dkt. 1 at ¶ 1; Garza Dec. at ¶ 5 at Ex. D at ¶ 4.  Most of the named inventors on the eleven patents-at-issue, most of the third-party witnesses with knowledge of the development of the DCI specification, and most of the third-party witnesses and documents critical to understanding the design, operation, and functionality of the DCI equipment underlying Intertrust's infringement allegations are located in NDCal or elsewhere in California.

Intertrust accuses each Defendant of infringing eleven patents-at-issue through their "use of DCI-compliant equipment suites to show movies."  Dkt. 1 at ¶ 15.  Digital Cinema Initiatives, LLC ("DCI") is a joint venture of Disney, Fox, Paramount, Sony Pictures, Universal, and Warner Bros Studios, each of which has a substantial presence in California.  DCI develops open

---

(N.D. Cal. Sept. 23, 2019)).  The court denied Intertrust's motion that there was no case or controversy, but granted a *Twombly* motion with leave to replead the details as to why the use of its equipment does not result in infringement of the eleven patents-at-issue.  Garza Dec. at ¶ 3 at Ex. B at 16.

architecture specifications for digital cinema equipment, and vendors like Dolby and Sony Electronics, Inc. ("SEL") develop and sell DCI-approved products to customers like the Defendants. It is those vendors—and not their customers—who have access to the source code and other documents and witnesses that will explain the detailed operation of the DCI-approved products underlying Intertrust's infringement claims.

In light of well-established legal precedent and the undisputed facts, Defendants respectfully request that this Court transfer this action to NDCal.

## II.   DESCRIPTION OF THE CASE

Intertrust is located and previously asserted its patents in NDCal.  For at least twenty-five years, Intertrust has had a principal place of business in NDCal in Sunnyvale, California. Garza Dec. at ¶ 6 at Ex. E at 1; Dkt. 1 at ¶ 1. Intertrust's employees as well as its counsel are in NDCal. Garza Dec. at ¶ 6 at Ex. E at 6–27; Dkt. 1 at Signature. Intertrust previously pursued patent infringement actions in NDCal, having filed suit against Microsoft Corporation in 2001 and Apple, Inc. ("Apple") in 2013. Garza Dec. at ¶ 5 at Ex. D, ¶ 7 at Ex. F at 2. The Apple action involved three of the same patents at issue in the current case. Garza Dec. at ¶ 5 at Ex. D at ¶ 4. In contrast, upon information and belief, Intertrust has no employees or presence in Texas unrelated to this lawsuit.

Major Hollywood studios formed California-based DCI to develop industry-wide technical specifications.  Intertrust accuses Defendants of infringement based on their use of products approved by third-party DCI. DCI is a joint venture of The Walt Disney Co. ("Disney"), Twentieth Century Fox Film Corp. ("Fox"), Paramount Pictures Corp. ("Paramount"), Sony Pictures Entertainment Inc. ("Sony Pictures"), Universal Studios LLC ("Universal"), and Warner Bros. Entertainment Inc. ("Warner Bros."). Garza Dec. at ¶ 8 at Ex.

G at 1.  DCI develops technical standards and specifications for digital cinema.  DCI and each of

its constituent joint venturers has a principal place of business in or near Los Angeles, California.

Garza Dec. ¶ 8 at Ex. G at 4, and ¶ 9 at Ex. H.  Defendants will seek discovery from DCI and its

participants related to the development of the standards, other options considered, and the

involvement of Sony Pictures and Intertrust in standard promulgation and commitments to make

the patented technology available on reasonable and non-discriminatory ("RAND") terms.

Garza Dec. at ¶ 10 at Ex. I.

     California-based Dolby and SEL supply the vast majority of the accused DCI-approved

Image Media Block ("IMB") equipment.  Vendors, rather than Defendants, possess the technical

documents and source code necessary to analyze and refute Intertrust's claims.  As detailed in its

infringement contentions, the IMB is central to Intertrust's claims.  Garza Dec. at ¶ 11 at Ex. J.

Dolby and SEL are Defendants' primary IMB vendors, and they are located in NDCal and San

Diego, California, respectively.  Garza Dec. at ¶ 2 at Ex. A at ¶ 3, and ¶ 12 at Ex. K.  SEL's

position is that its product is licensed (Garza Dec. at ¶ 13 at Ex. L), and Dolby first-filed a

declaratory judgment action to defend its products and customers as to each asserted patent.

Garza Dec. at ¶ 2 at Ex. A.  None of the remaining IMB vendors implicated by Intertrust's

allegations are located in Texas.  Garza Dec. at ¶ 14 at Ex. M.

     Remaining non-party witnesses and evidence are predominately in California and not in

EDTex.  Additional non-party witnesses are principally located in California and specifically

NDCal.  Eleven of the fifteen inventors of the asserted patents live in NDCal, and no inventors

reside in Texas.[2]  Garza Dec. at ¶ 15 at Ex. N.  Intertrust's licensees are in or close to NDCal and likewise are not located in Texas.  Garza Dec. at ¶ 16 at Ex. O.

Each of the Defendants operates theaters in NDCal using DCI-approved equipment to exhibit movies.  Although Cinemark has a principal place of business in Plano, Texas within EDTex, Defendants AMC and Regal are headquartered in Leawood, Kansas and Knoxville, Tennessee, respectively.  Garza Dec. at ¶ 17 at Ex. P at ¶ 3, ¶ 18 at Ex. Q at ¶ 3, and ¶ 19 at Ex. R at ¶ 3.  Each Defendant has a substantial operational presence within NDCal.  Garza Dec. at ¶ 17 at Ex. P at ¶ 5, ¶ 18 at Ex. Q at ¶ 5, and ¶ 19 at Ex. R at ¶ 5.  Details regarding the design and operation of the DCI-approved equipment used by Defendants reside with the vendors of that equipment, and not with Defendants.  Garza Dec. at ¶ 17 at Ex. P at ¶ 7, ¶ 18 at Ex. Q at ¶ 7, ¶ 19 at Ex. R at ¶ 7, and ¶ 20 at Ex. S at ¶ 13.

## III.   STATEMENT OF THE LAW

Section 1404(a) provides that a district court may transfer a civil action to any district in which it might have been filed "[f]or the convenience of the parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a).  Fifth Circuit law, as applied by the Federal Circuit, governs the transfer analysis.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (applying Fifth Circuit law to transfer analysis); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (same).  Plaintiff's venue choice is not a factor to be considered in this analysis: "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *TS Tech*, 551 F.3d at 1320.

---

[2] Intertrust represents that it is no longer asserting the '610 patent, but has not dismissed it from the case.  If the '610 patent is dismissed, the inventor count would be eleven total with seven in NDCal.

- 5 -

The initial inquiry when analyzing a case's eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold is met, the convenience determination turns on assessing four private interest and four public interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The private interest factors include: (1) the relative ease of access to sources of proof; (2) the cost of attendance for willing witnesses; (3) the availability of compulsory process to secure the attendance of witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen II*, 545 F.3d at 315; *In re Nintendo, Co. Ltd*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *TS Tech*, 551 F.3d at 1319. The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen II*, 545 F.3d at 315.

In evaluating convenience, these private and public interest factors are not necessarily exhaustive or exclusive and no single factor is dispositive. *Volkswagen I*, 371 F.3d at 203. Typically, the most important of these factors "is whether substantial inconvenience will be visited upon key fact witnesses should the court deny transfer." *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 774 (E.D. Tex. 2000). By contrast, court congestion is the most speculative factor. *In re Genentech*, 566 F.3d at 1347 (citing *Collins v. Am. Auto. Ins. Co.*, 230 F.2d 416, 419 (2d Cir. 1956)).

## IV.      THE TRANSFER ANALYSIS FAVORS NDCAL

NDCal is a proper venue and is clearly a more convenient forum with greater local interest.  Details and analysis are provided below.

### A.      These Actions Could Have Been Brought in NDCal

The venue statute for patent litigation provides: "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established business."  28 U.S.C. § 1400(b).  Because the Defendants each operate theaters in NDCal that utilize DCI-approved equipment as accused in the Complaint (Garza Dec. at ¶ 17 at Ex. P at ¶ 5, ¶ 18 at Ex. Q at ¶ 5, and ¶ 19 at Ex. R at ¶ 5), Intertrust's infringement claims could have been brought in NDCal. Therefore, the initial inquiry is satisfied.

### B.      The Private Interest Factors Favor Transfer

As discussed in detail below, private factor considerations strongly favor transfer to NDCal because sources of proof are more easily accessible, third-party witnesses are subject to compulsory process, and the cost of witness travel would be substantially reduced.  These factors weigh overwhelmingly in favor of transfer.

#### 1.      Relative Ease of Access to Sources of Proof Strongly Favors Transfer

Access to sources of proof is considerably easier in NDCal as compared to EDTex. "[A]lmost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues."[3]  *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767

---

[3] The physical location of documents and evidence remains a factor despite advances in copying and electronic data transfer technologies.  *In re Genentech*, 566 F.3d at 1345; *In re Toa Techs.,*

(E.D. Tex. 2009).  Here, the relevant parties possessing technical documents are predominately Intertrust, the named inventors, DCI, and Defendants' DCI equipment suppliers.

Intertrust and its employees are located in NDCal.  Garza Dec. at ¶ 6 at Ex. E.  Eleven of the fifteen inventors of the asserted patents live in NDCal.  Garza Dec. at ¶ 15 at Ex. N.  Intertrust's infringement allegations are largely mappings to DCI standards, with DCI and its documents located in California.  Garza Dec. at ¶ 11 at Ex. J, ¶ 8 at Ex. G.

In addition, technical documentation and source code regarding DCI equipment, particularly IMBs, are predominately in Defendants' suppliers' control in California.  Specifically, neither Dolby nor SEL provides Defendants with the detailed technical information, schematics, or source code underlying the IMB functionalities accused by Intertrust.  Garza Dec. at ¶ 17 at Ex. P at ¶ 7, ¶ 18 at Ex. Q at ¶ 7, ¶ 19 at Ex. R at ¶ 7, and ¶ 20 at Ex. S at ¶ 13.  Dolby's relevant technical, marketing, sales, research, design, and development-related witnesses and documents are centered in NDCal—where it initiated the first-in-time *Dolby* Action regarding this same equipment and the patents-at-issue.  Garza Dec. at ¶ 20 at Ex. S at ¶¶ 6, 9–10.  Similarly, SEL's relevant technical (including source code), marketing, sales, research, design, and development-related witnesses and documents are believed to be in California.  Garza Dec. at ¶ 12 at Ex. K.  Remaining potentially relevant DCI equipment vendors that could have pertinent witnesses and documents are located in California and Canada.  Garza Dec. at ¶ 14 at Ex. M.

---

*Inc.*, 543 F. App'x 1006, 1008–09 (Fed. Cir. 2013) (finding arguments that "digital information is 'effectively stored everywhere, including the Eastern District of Texas' . . . does not negate the significance of having trial closer to where [the relevant witnesses] physical documents and employee notebooks are located" because "[t]he critical inquiry 'is relative ease of access, not absolute ease of access'").

By contrast, no identified DCI vendor witnesses or documents have been identified as located or maintained in EDTex.  Cinemark, although headquartered in EDTex, has relatively few relevant witnesses and documents beyond those concerning its limited interactions with Intertrust, its theater revenue, and its procurement of DCI-approved equipment from vendors. Garza Dec. at ¶ 19 at Ex. R at ¶ 8.  Defendants AMC and Regal have even less connection to EDTex than Cinemark, with their witnesses and documents regarding revenue and procurement at their headquarters in Leawood, Kansas and Knoxville, Tennessee, respectively.  Garza Dec. at ¶ 17 at Ex. P at ¶ 8, and ¶ 18 at Ex. Q at ¶ 8.

It would be extremely inefficient and a substantial inconvenience to the parties and third parties to force Defendants to defend in EDTex technology that they neither designed nor developed, particularly where litigating Intertrust's claims will require access to sources of proof outside Defendants' custody or control, outside of this district, and present in the proposed transferee forum that is already handling an earlier-filed case involving same.  Accordingly, this private interest factor therefore weighs heavily in favor of transfer.

### 2.    Availability of Compulsory Process Favors Transfer

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order.  *Volkswagen II*, 545 F.3d at 216; *see also In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (compulsory-process factor "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue").  A district court's subpoena power is governed by Federal Rule of Civil Procedure 45 and for purposes of transfer analysis, has three relevant provisions.  *See Virtual Agility, Inc. v. Salesforce, Inc.*, No. 2:13-cv-00011, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014)

(explaining 2013 amendments to Rule 45); *see also United States v. Team Fin., L.L.C.*, No. 2:16-CV-00432-JRG, 2019 WL 3976364, at *8 (E.D. Tex. Aug. 22, 2019).   Specifically, a district court can command a person to attend a deposition or trial within 100 miles of where they live or work, or statewide if they are a party witness.  Fed. R. Civ. P. 45(c)(1)(A), 45(c)(1)(B)(i).  And, for purposes of trial attendance, a district court has subpoena power over non-party residents of the state in which the district court sits as long as their attendance would not result in "substantial expense."  Fed. R. Civ. P. 45(c)(1)(B)(ii).

Here, there are critical non-party witnesses within the subpoena power of NDCal.  Eleven of the fifteen inventors are located in NDCal.  Garza Dec. at ¶ 15 at Ex. N.  Several Intertrust licensees are located in NDCal, including Apple.  Garza Dec. at ¶ 16 at Ex. O.  Dolby's witnesses are located in or substantially closer to NDCal.  And, witnesses from Sony and DCI are located in California.  Garza Dec. at ¶ 8 at Ex. G, and ¶ 12 at Ex. K.  The remaining identified licensees, prosecution attorneys, and DCI vendors are not located within either California or Texas.  Further, no material non-party witnesses have been identified in EDTex.  Because of the substantial number of non-party witnesses in NDCal and California and lack of non-party witnesses in EDTex or Texas, this factor strongly favors transfer.

<h3>3.     Convenience and Cost for Willing Witnesses Strongly Favors Transfer</h3>

The convenience and cost of witness attendance is "the single most important factor in the transfer analysis."  *In re Genentech*, 566 F.3d at 1343.  The question is not whether "*all* of the witnesses" reside in the transferee forum, but whether a "substantial number" are there.  *In re Genentech*, 566 F.3d at 1345; *see also ACQIS LLC v. EMC Corp.*, 67 F. Supp. 3d 769, 776, (E.D. Tex. 2014).  When a substantial number of party and non-party witnesses live in the transferee forum, while few live in the plaintiff's chosen forum, transfer should be ordered.  *See*

*In re Genentech*, 566 F.3d at 1342–45; *Nintendo*, 589 F.3d at 1198 ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."). The court properly considers party and non-party witnesses when analyzing this factor. *See Volkswagen I*, 371 F.3d at 204.

As detailed above, a substantial number of party witnesses and potentially willing non-party witnesses live in NDCal. Eleven of fifteen inventors, as well as Dolby witnesses and Intertrust witnesses, are located in NDCal. Garza Dec. at ¶ 6 at Ex. E, ¶ 15 at Ex. N, and ¶ 20 at Ex. S at ¶¶ 6, 9–10. DCI, SEL, and several other vendor and Intertrust licensee witnesses are located in California. Garza Dec. at ¶ 8 at Ex. G, ¶ 12 at Ex. K, ¶ 14 at Ex. M, and ¶ 16 at Ex. O. And Dolby is already challenging allegations against its equipment in the earlier-filed action in NDCal, and failure to transfer would impose duplicative costs on Dolby.

By contrast, Defendants anticipate that the only potential party witnesses from EDTex may include Cinemark's Rule 30(b)(6) corporate representatives, depending on the issues that arise in this case. Garza Dec. at ¶ 19 at Ex. R at ¶ 8. Of course, the presence of a few witnesses in Texas does not overcome the wealth of witnesses in NDCal and California. *Nintendo*, 589 F.3d at 1198. Accordingly, this factor strongly favors transfer.

4.     Other Practical Factors Favor Transfer

The final private interest considerations are the practical problems related to the ease, expense, and expediency of trial, which include considerations "that are rationally based on judicial economy." *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 6:13CV919-JDL, 2014 WL 6847569, at *4 (E.D. Tex. Nov. 7, 2014). Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in

- 11 -

favor of or against transfer.  *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*") ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice."). Here, the *Dolby* Action and the current cases all involve the same eleven patents and the same core issues—purported infringement by DCI-approved products, claim construction of patent terms, and invalidity of the Intertrust patents.  Garza Dec. at ¶ 2 at Ex. A at ¶¶ 1–2; Dkt. 1 at ¶¶ 3–4.  Having two courts litigate these same issues would be a waste of resources.  Accordingly, the final private interest factor also favors transfer.

### C.      The Public Interest Factors Favor Transfer

The public interest factors also favor transfer to NDCal.  Considerations of local interest strongly favor transfer because, unlike EDTex, NDCal has a strong connection to these cases. The remaining factors such as court congestion and familiarity with the law are neutral. Therefore, on balance, the public interest factors weigh in favor of transfer.

### 1.      Court Congestion is Neutral

The speed in which a case can come to trial and be resolved can be a factor that weighs in favor of transfer.  *In re Genentech*, 566 F.3d at 1347.  The most recent Federal Judicial Caseload Statistics show that the median time to resolve a case is 7.9 months in NDCal and 8.7 months in EDTex, and the median time to trial in civil cases is slightly shorter in NDCal (25.9 months) compared with EDTex (27.0 months).  Garza Dec. at ¶ 21 at Ex. T.  Because of the similarity in time to trial, this factor is neutral.

### 2.      Local Interest in Adjudicating Local Disputes Favors Transfer

NDCal has a much stronger local interest in this litigation than does EDTex.  This factor weighs in favor of transfer because of the factual connection that this action has to the transferee

venue and the lack of connection to EDTex.  *Volkswagen I*, 371 F.3d at 206 ("jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation").  Intertrust has conducted business from NDCal for over twenty-five years.  Garza Dec. at ¶ 6 at Ex. E.  Dolby likewise is a long time resident of NDCal and initiated its action in NDCal.  Garza Dec. at ¶ 2 at Ex. A at ¶ 3.  The accused DCI products are sold and marketed throughout the United States from California.  Garza Dec. at ¶ 20 at Ex. S at ¶¶ 10–11.  The location of the vast majority of party and non-party witnesses in NDCal gives NDCal a "significant localized interest in the action."  *Custom Seal, Inc. v. Duro-Last Roofing, Inc.*, No. 6:11-CV-122, 2012 WL 12930886, at *10 (E.D. Tex. Sept. 20, 2012) (finding that the defendant and all its employee witnesses were located in the transferee district, giving that district a "significant localized interest in the action").

The Defendants theater presence and sales in EDTex do not impact this factor because, just as the Defendants have theaters and generate revenues in EDTex, they each also have theaters and generate revenues in NDCal.  Garza Dec. at ¶ 17 at Ex. P at ¶ 5, ¶ 18 at Ex. Q at ¶ 5, and ¶ 19 at Ex. R at ¶ 5.  Given that there are no meaningful ties to EDTex but significant ties to NDCal, NDCal has a greater local interest in this suit and this factor weighs in favor of transfer.

   3. <u>Familiarity With the Law and Avoidance of Conflicts Factors Are Neutral</u>

The remaining public interest factors are neutral given that federal patent law will apply to this case and both Districts are well-equipped to adjudicate patent issues.  *See TS Tech*, 551 F.3d at 1320-21 (finding that the transferee and transferor courts were both "capable of applying patent law to infringement claims.").

   4. <u>The Public Interest Underlying the First-To-File Rule Favors Transfer</u>

Because Intertrust's later-filed cases are duplicative of the *Dolby* Action, maintaining Intertrust's choice of venue would violate the first-to-file rule and reward and promote forum

- 13 -

shopping.  Under the first-to-file rule, "the forum of the first-filed case is favored [over subsequent actions], unless considerations of judicial and litigant economy, and the just effective disposition of disputes, require otherwise."  *Genentech,* 998 F.2d at 937.  The *Dolby* Action is indisputably the first-filed action—initiated fifty-five days before Intertrust filed the current actions—and is based on the same patents and issues (i.e., patent scope, infringement, and validity) that Intertrust is attempting to litigate in this District.  Garza Dec. at ¶ 2 at Ex. A at ¶¶ 1–2; Dkt. 1 at ¶¶ 3–4.

A later-filing plaintiff, like Intertrust, cannot evade the first-to-file rule simply by accusing additional parties, namely Defendants AMC, Cinemark, and Regal, in a duplicative subsequent action.  *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 903 (Fed. Cir. 2008) ("If, as in this case, a patent holder could simply name another defendant or add a few additional claims to the later filed infringement suit, then the Supreme Court's more lenient standard for the declaratory judgment plaintiff would lose its primary intended effect.").  Application of the first-to-file rule does not require identity of parties, only that the cases "involve closely related questions or subject matter or the core issues substantially overlap."  *AmberWave Sys. Corp. v. Intel Corp.*, No. 2:05-cv-321, 2005 WL 2861476, at *1 (E.D. Tex. Nov. 1, 2005).  Because the issues to be decided in both cases are the same, Intertrust's attempt to avoid the first-to-file doctrine and forum shop should not be countenanced.  *See Save Power, Ltd. v. Syntek Finance Corp.,* 121 F.3d 947, 950 (5th Cir. 1997).

Intertrust also has no basis to argue that proceeding in California will cause it any "wrong or injustice" or that this case represents an exceptional circumstance necessary to overcome the first-to-file rule.  *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081–82 (Fed. Cir. 1989).  Because Dolby filed its case in the nearest district court to its principal place of business in San Francisco,

Intertrust cannot establish that Dolby had "no sound reason" for filing its suit in NDCal, nor that its choice "was motivated by inequitable conduct, bad faith, or forum shopping." *Genentech*, 998 F.2d at 938.   "[I]nstead of being forced to await the initiative of the antagonist," Dolby sought declaratory judgment to end Intertrust's baseless allegations of patent infringement in the forum that is home to both Dolby and Intertrust. *Genentech*, 998 F.2d at 937.

Even if the Court determines that the first-to-file doctrine does not apply, the *Dolby* Action still takes precedence because of a "manufacturer's presumed greater interest in defending its actions against charges of patent infringement." *Kahn*, 889 F.2d at 1081.   The "customer suit" exception to the first-to-file doctrine applies "where the first suit is filed against a customer who is simply a reseller of the accused goods, while the second suit is a declaratory action brought by the manufacturer of the accused goods." *Id*.   Here, Dolby and SEL—who claim a license to the asserted patents—supply the vast majority of DCI-approved IMBs to each of the Defendants.   Accordingly, Dolby has a greater interest in defending its products against Intertrust's allegations than do the Defendants, and the *Dolby* Action should take priority.   For this additional reason, the interests of the public favor transfer.

## V.   <u>CONCLUSION</u>

Defendants request that the Court transfer this case to NDCal, which is a more convenient forum for the claims in this action to be heard.

November 27, 2019                                  Respectfully submitted,

                                                   By: */s/ Richard S. Zembek*
                                                   /s/ Richard S. Zembek
                                                   Richard S. Zembek
                                                   Texas State Bar No. 00797726
                                                   richard.zembek@nortonrosefulbright.com
                                                   Eric B. Hall
                                                   Texas State Bar No. 24012767
                                                   eric.hall@nortonrosefulbright.com
                                                   1301 McKinney, Suite 5100
                                                   Houston, Texas 77010-3095
                                                   Tel: (713) 651-5151
                                                   Fax: (713) 651-5246

                                                   James S. Renard
                                                   Texas State Bar No. 16768500
                                                   james.renard@nortonrosefulbright.com
                                                   Michael A. Swartzendruber
                                                   Texas State Bar No. 19557702
                                                   michael.swartzendruber@nortonrosefulbright.com
                                                   2200 Ross Avenue, Suite 3600
                                                   Dallas, Texas 75201-7932
                                                   Tel: (214) 855-8000
                                                   Fax: (214) 855-8200

                                                   Stephanie N. DeBrow
                                                   Texas State Bar No. 24074119
                                                   stephanie.debrow@nortonrosefulbright.com
                                                   Eric C. Green
                                                   Texas State Bar No. 24069824
                                                   eric.green@nortonrosefulbright.com
                                                   Catherine J. Garza
                                                   Texas State Bar No. 24073318
                                                   cat.garza@nortonrosefulbright.com
                                                   98 San Jacinto Boulevard, Suite 1100
                                                   Austin, Texas 78701-4255
                                                   Tel: (512) 536-3094
                                                   Fax: (512) 536-4598
                                                   ATTORNEYS FOR DEFENDANT

                                                   *COUNSEL FOR AMC ENTERTAINMENT*
                                                   *HOLDINGS, INC., CINEMARK HOLDINGS,*
                                                   *INC., AND REGAL ENTERTAINMENT GROUP*

- 16 -

## CERTIFICATE OF SERVICE

I certify that this document was served via email to all counsel of record on November

27, 2019.

/s/ Catherine J. Garza
Catherine J. Garza